IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF GEORGIA
BRUNSWICK DIVISION

| | |
|---|---|
| CHARLOTTE KELLOGG, as Executrix of the Estate of KEITH KELLOGG, | |
| Plaintiff, | CIVIL NO. CV223-132 |
| v. | **JURY TRIAL DEMANDED** |
| JOHNS MANVILLE (INC.), | |
| Defendant. | |

## **COMPLAINT**

The estate of Keith Kellogg, deceased, by and through Charlotte Kellogg, the Executrix of his Estate ("Kellogg" or "Plaintiff") files this Complaint against Johns Manville (Inc.) ("Johns Manville" or "Defendant"), seeking damages, equitable relief, attorneys' fees, and all other remedies available under the applicable law, as set forth below.

## **Nature of Complaint**

1.

This action is brought pursuant to the Americans With Disabilities Act, as amended, 42 U.S.C. § 12101 et seq. ("ADA"), seeking back pay, front pay in lieu of

reinstatement, compensatory and punitive damages and other available relief based on disability discrimination, failure to accommodate, and retaliation that Mr. Kellogg experienced during and upon the termination of his employment from Johns Manville.

2.

Unfortunately, Mr. Kellogg passed away unexpectedly on August 3, 2023. His ADA claims against Johns Manville as set forth herein were not extinguished by his death. Mr. Kellogg's wife, Charlotte Kellogg, is pursuing his claims as the Executrix of Mr. Kellogg's estate, a position to which she was appointed in his Last Will and Testament.

## **The Parties**

3.

Mr. Kellogg was, and Charlotte Kellogg is, a citizen of the United States and a resident of the State of Georgia, Glynn County.  He was employed by Defendant Johns Manville at its Brunswick, Georgia plant for thirty-eight years.  Mr. Kellogg was, at all times relevant hereto, an employee of Johns Manville within the meaning of the ADA.

4.

Charlotte Kellogg was named the Executrix of the estate of Keith Kellogg in his last will and testament.  She survives him and is duly serving in that capacity.

5.

Defendant Johns Manville is a foreign limited liability company which is organized under the laws of the State of Delaware with its principal place of business in Denver, Colorado.  Johns Manville is registered to do business in Georgia as a foreign corporation and transacts ongoing business operations at its Brunswick, Georgia plant.  Johns Manville may be served with process through its Georgia registered agent for service of process, Prentice-Hall Corporation System at 2 Sun Court, Suite 400, Peachtree Corners, Georgia 30092.

## Jurisdiction and Venue

6.

Mr. Kellogg's claims present federal questions over which this Court has jurisdiction pursuant to 28 U.S.C. §§ 1331, 42 U.S.C. § 12117, 42 U.S.C. §2000e-5(f)(3) and other applicable law.

7.

This Court has personal jurisdiction over Johns Manville under the Georgia Long-Arm Statute because it is registered to and does in fact transact business in Georgia and maintains ongoing business operations at its facility in Brunswick, Georgia, and other facilities throughout Georgia. Additionally, this Court also has personal jurisdiction over Defendant because Plaintiff's claims arise out of tortious acts committed by Defendant in this State.

8.

This is an appropriate venue for all of Mr. Kellogg's claims pursuant to 28 U.S.C. § 1391, 42 U.S.C. §2000e-5(f)(3), and Local Rule 2.1(a) as the judicial district in which the Defendant resides and in which the events and omissions, including unlawful employment acts, giving rise to Mr. Kellogg's claims occurred.

## Administrative Proceedings

9.

Mr. Kellogg filed a charge of discrimination with the EEOC on March 3, 2023 setting forth claims of disability discrimination, failure to accommodate, and retaliation in violation of the Americans With Disabilities Act, as amended, 42 U.S.C. § 12101 *et seq.* ("ADA"). That Charge was timely filed less than 180 days after the acts of discrimination and retaliation identified in the Charge.

10.

The EEOC issued a Notice of Right to Sue on September 19, 2023, and Plaintiff files this Complaint within 90 days of receipt of that Notice.

## The Facts

### Mr. Kellogg's Employment History

11.

Mr. Kellogg began his employment for Johns Manville in or about 1985. For the last 33 years of his employment, since approximately 1989, he worked as

4

Warehouse Supervisor at the Brunswick until his termination on January 6, 2023. As warehouse supervisor, Mr. Kellogg was responsible for directing the day-to-day warehouse operations to ensure customers received correct products on time. Mr. Kellogg performed well in this role as evidenced by his extended tenure. He was well respected by his peers and supervisors alike. However, Jons Manville terminated Mr. Kellogg's employment due to his disability despite him being able to perform the essential duties of his job position on January 6, 2023, while pushing the official termination date to January 31 to run out his paid time off.

<u>Mr. Kellogg's Injuries</u>

12.

In 2019, Mr. Kellogg sustained an injury that required him to be hospitalized for forty-five days.  He took five months of short-term disability leave to recuperate from his injury but returned to nearly full duty thereafter in February 2020.

13.

Although he requested no accommodations upon his return, the Plant Manager at the time, Jack Lathrop, and Superintendent Crystal Bass, modified his job duties unsolicited.  Specifically, from the time he returned to work in February 2020 and continuing through the rest of that year, the Company limited Mr. Kellogg's duties that necessitated moving about the plant floor. Instead, he performed all of his

Warehouse Supervisor duties from his office, and he was able to do so without any issue.

14.

They also provided him with a designated parking spot closer to the plant to minimize his need to walk from the parking lot – again this accommodation was unsolicited but nevertheless appreciated and utilized by Mr. Kellogg, as it made his workday easier and more pleasant.

15.

At no time during 2020 when the Company provided the unsolicited accommodations described above did anyone ever raise any concerns about Mr. Kellogg's job performance.   He did not receive any reprimands or negative performance reviews.

16.

JM brought in a new Plant Manager, Scott Griffith, at the beginning of 2021. Again, Mr. Kellogg requested no accommodations, but Mr. Griffith suggested to Mr. Kellogg that the Company provide him a golf cart, to promote faster and more efficient mobility around the plant. Mr. Kellogg appreciated the gesture, assisted with the process of procuring and bringing into service a golf cart, and put it to good use. Using the golf cart, he continued to work for over a year with no incident and no need for any other accommodations.

17.

At no time during 2021 did anyone raise any concerns about Mr. Kellogg's job performance, and he did not receive any reprimands or negative performance reviews during that time period.

18.

Unfortunately, Mr. Kellogg sustained another injury on April 29, 2022, when he fell at home and cracked one of his vertebrae. This injury necessitated another five months of short-term disability leave, but he once again returned with a release to full duty upon recovery.

19.

Upon his return on October 5, he discovered that the new Plant Manager, Jordi Vilaseca, had reassigned his golf cart to the maintenance department. He further found that Johns Manville had taken away his assigned parking spot and reassigned him elsewhere. His new spot, which had an unrequested "handicap" designation, was too small to get in and out without hitting others, so Mr. Kellogg began to park elsewhere, further away, and walked into the plant from there.

20.

Although he felt that these changes were an effort to make things more difficult for him at work without good reason, he did not formally complain about them and instead continued performing his regular job duties without interruption.

<u>Mr. Kellogg Requests Reasonable Accommodations</u>

21.

A few weeks after his October 5 return to work, Mr. Kellogg went to his yearly physical. His physician, Dr. Steven Williams, wrote Johns Manville a note following that October 21, 2022 visit that stated, "[Mr. Kellogg] has pain in his back and legs associated with walking long distances. Any accommodations that could be made for him to assist in performing his job would be appreciated." When Mr. Kellogg submitted this note to Johns Manville, human resources told him he needed to complete ADA accommodation paperwork.

22.

Mr. Kellogg complied with Defendant's request for ADA paperwork.  Dr. Williams completed the Request for Medical Information for Reasonable Accommodation form on November 2 and submitted it to Johns Manville. The form states that Mr. Kellogg has limited mobility which impacts his ability to perform manual tasks such as standing, walking, and lifting but states explicitly that, in Dr. Williams' medical opinion and based on his review of the Warehouse Supervisor job description, Mr. Kellogg could still perform all the essential functions of the job.

23.

For the next two months, Mr. Kellogg received no further communication from Johns Manville regarding his request for reasonable accommodations, and he

continued to perform his job proficiently without any modifications to his regular duties.

<u>Mr. Kellogg's Unlawful Termination from Johns Manville</u>

24.

On January 6, 2023, Plant Manager Vilaseca called in Mr. Kellogg for a meeting with himself, a company nurse, and Multi-Site Human Resources Manager Cheryl Bijstorm. During this meeting, the Company officials completely blindsided Mr. Kellogg, informing him that Johns Manville would be unable to make any accommodations for him, and his employment would be terminated effective January 31, 2023. They further told him he should apply for long-term disability ("LTD") benefits in order to continue receiving some income.

25.

The Company's stated reason for termination Mr. Kellogg's employment was its belief that he was not fit enough to work. In other words, the Company terminated his employment because of his disability.

26.

Mr. Kellogg completed the application for LTD benefits on January 20 only because Johns Manville was not permitting him to work, even though he remained able and would have preferred to work with or without accommodations as evident

from the two months he did so at the end of 2022 and leading up to his unlawful termination on January 8, 2023.

27.

At no time was Mr. Kellogg unable to perform the essential functions of his position.

28.

At no time did Johns Manville explain why they could not accommodate his disability despite previously providing him unsolicited accommodations for many months at a time without any issue.

29.

Johns Manville did not engage in the interactive process with Mr. Kellogg at any time between October 2022 and informing him that the Company could not accommodate him and was terminating his employment in January 2023.

30.

Johns Manville terminated Mr. Kellogg's employment due to his disability.

31.

The termination of his employment caused Mr. Kellogg to experience financial losses in the form of lost wages and caused him severe emotional distress.

32.

Mr. Kellogg sought medical treatment for the depression that he suffered as a result of the discriminatory and retaliatory termination of his 38-year employment. Mr. Kellogg had never had any mental health issues prior to the termination of his employment, and his depression in 2023 was caused directly by that termination.

33.

Mr. Kellogg's depression caused him to stop engaging in many activities that he previously enjoyed, and he stayed home much of the time.  Mr. Kellogg's family believes that his decreased activity level and loss of enjoyment of life ultimately led to his death in August 2023, approximately seven months after his termination.

## COUNT I
## DISCRIMINATION IN VIOLATION OF THE ADA

34.

Plaintiff incorporates by reference all the preceding paragraphs of the Complaint.

35.

Between 2019 and 2023, Mr. Kellogg had a disability under the ADA, consisting of one or more physical conditions that substantially limited one or more major life activities.

36.

At all times between his return to work on October 5, 2022 and Defendant's termination of his employment in January 2023, and continuing until at or shortly before his death on August 3, 2023, Mr. Kellogg was a qualified individual with a disability.  He could perform the essential functions of his position at the Brunswick plant with or without reasonable accommodations.

37.

Defendant had knowledge of Mr. Kellogg's disability.

38.

In 2020, 2021, and 2022 Defendant provided reasonable accommodations to Mr. Kellogg to assist him in his performing his job duties, despite his ability to perform them without accommodations.

39.

Defendant discriminated against Mr. Kellogg on the basis of his disability in 2023 by refusing to provide any reasonable accommodation for his disability.

40.

Defendant cannot establish that the accommodations that Mr. Kellogg requested or which would have enabled him to perform the essential functions of his position posed an undue hardship.

41.

Defendant's decision to terminate Mr. Kellogg's employment was based on his disability and/or the fact that he had requested a reasonable accommodation under the ADA.

42.

Defendant's termination of Mr. Kellogg's employment constitutes disability discrimination under the ADA.

43.

Defendant acted with reckless disregard for Mr. Kellogg's rights under federal law.

44.

As a direct and proximate result of Defendant's unlawful and discriminatory employment practices, Mr. Kellogg suffered lost earnings and benefits including lost wages, emotional distress, inconvenience, humiliation, and other indignities compensable under the ADA, for which Johns Manville is liable.

45.

Defendant acted maliciously, willfully, wantonly, oppressively, or recklessly, toward Mr. Kellogg, authorizing a punitive damages award against Johns Manville.

## COUNT II
## RETALIATION IN VIOLATION OF THE ADA

46.

Plaintiff incorporates by reference all the preceding paragraphs of the Complaint.

47.

Mr. Kellogg's requests for reasonable accommodation, including but not limited to his submission of a doctor's note referencing his need for accommodations in October 2022, constitute protected activity under the ADA.

48.

Mr. Kellogg suffered adverse employment action when Johns Manville refused to accommodate his reasonable request and terminated his employment despite Mr. Kellogg's ability to perform all essential functions of his job.

49.

There is a causal connection between Mr. Kellogg's protected activity and the adverse employment action he suffered.

50.

Mr. Kellogg suffered damages as a direct and proximate result of the adverse action taken against him based on his engagement in protected activity, including but not limited to lost wages and emotional distress.

## COUNT III
## FAILURE TO ACCOMMODATE IN VIOLATION OF THE ADA

51.

Plaintiff incorporates by reference all of the preceding paragraphs of the Complaint.

52.

Between 2019 and January 2023, Defendant knew that Mr. Kellogg had a disability as that term is defined under the ADA.

53.

There were reasonable accommodations available during that time period as referenced above that would have enabled Mr. Kellogg to perform the essential functions of his position.

54.

Johns Manville never engaged in the interactive process with Mr. Kellogg regarding what accommodations might enable him to perform the essential functions of his position.

55.

Defendant's actions in refusing to provide accommodations and terminating Mr. Kellogg's employment after he submitted a reasonable accommodation request constitutes a failure to accommodate in violation of the ADA.

56.

Johns Manville specifically informed Mr. Kellogg that it could not accommodate him when it terminated his employment.

57.

Defendant cannot establish that the accommodations that Mr. Kellogg requested or which would have enabled him to perform the essential functions of his position posed an undue hardship.

58.

As a direct and proximate result of Defendant's unlawful employment practices, Mr. Kellogg has suffered lost wages, emotional distress, inconvenience, humiliation, and other indignities compensable under the ADA, for which Defendant is liable.

59.

Defendant acted maliciously, willfully, wantonly, oppressively, or recklessly, toward Mr. Kellogg, authorizing a punitive damages award against Defendant.

## **PRAYER FOR RELIEF**

WHEREFORE, Plaintiff demands a **TRIAL BY JURY** and requests the following relief:

a) A judgment enjoining Defendant from engaging in unlawful employment practices and awarding Plaintiff back pay as provided by the ADA, 42 U.S.C. § 2000e-5 and other applicable law;

b) A judgment awarding Plaintiff compensatory and punitive damages, in an amount to be determined by the enlightened conscience of the jury;

c) Award Plaintiff his attorney's fees;

d) Award Plaintiff pre-judgment and post-judgment interest; and

e) Award Plaintiff all other and further relief as available under applicable law and as this Court deems just and proper.

Respectfully submitted this 17th day of December, 2023.

**STEMBRIDGE TAYLOR LLC**

*/s/ John T. Stembridge*
John T. Stembridge
Georgia Bar No. 678605
john@stembridgetaylor.com
2951 Piedmont Road, Suite 200
Atlanta, Georgia 30306
Lisa Durham Taylor  (*pro hac vice pending*)
Georgia Bar No. 235529
lisa@stembridgetaylor.com
3651 Mars Hill Road, Suite 2900B
Watkinsville, Georgia 30677
Telephone: (404) 604-2691

Counsel for Plaintiff
Charlotte Kellogg, Executrix of the Estate of
Keith Kellogg

17